IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2021 Session

## J. PEMBERTON GUERRY v. JAMES CHRISTOPHER JENKINS AND GAIL JENKINS

**Appeal from the Circuit Court for Hamilton County**
**No. 18C685     Kyle E. Hedrick, Judge**

_____

### No. E2020-00709-COA-R3-CV

_____

This appeal arises from an action for breach of a promissory note. After granting the plaintiff's motion for partial summary judgment on his claim against one of the defendants, the court held an evidentiary hearing to determine damages. Following the hearing, the court entered a judgment for $1,628,074.27, which included interest and attorney's fees. On appeal, the defendant contends that, in accordance with the terms of the promissory note, the plaintiff is only entitled to recover the principal sum of $14,194.43 plus interest. We have determined that the defendant failed to properly raise this issue in the trial court; therefore, it is waived. Accordingly, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

James A. Hurst, Jr., Chattanooga, Tennessee, for the appellant, James Christopher Jenkins.

Zachary H. Greene and Haley E. Moody, Chattanooga, Tennessee, for the appellee, J. Pemberton Guerry.

### OPINION

In 2003, the plaintiff, J. Pemberton Guerry ("Mr. Guerry"), and the defendants, James Christopher Jenkins, Jr. ("Mr. Jenkins") and his wife, Gail Jenkins ("Mrs. Jenkins") (collectively, "Defendants"), started an electrical services company called Facility Technology Solutions, LLC ("FTS"). Mr. Guerry and Mrs. Jenkins were the sole members

of FTS.[1] And Mr. Jenkins, who was an electrical contractor by trade, provided industry-related expertise.

In January 2008, Miller Electrical Contractors, Inc. purchased the assets of FTS, at which time the members began winding down the business of FTS. Because FTS maintained a line of credit with SunTrust Bank and the SunTrust Note was due to mature that year, FTS inquired about extending the note, and the bank agreed to extend the line of credit provided that Mr. Guerry sign a personal guarantee.

Before Mr. Guerry signed a personal guarantee as requested by SunTrust Bank and before FTS renewed the SunTrust credit line, Mr. Guerry and Defendants executed an "Acknowledgment of Indebtedness and Indemnification Agreement" ("Agreement"). The Agreement provided that Mr. Guerry would paydown a portion of the SunTrust debt and would personally guarantee a renewed line of credit, as required by SunTrust Bank. In exchange, Defendants promised to pay the remaining debt on the SunTrust Note with interest, as well as any attorney's fees or other legal expenses incurred by Mr. Guerry incident to the enforcement of the Agreement.

Proceeding in accordance with the Agreement, on September 24, 2008, FTS executed a promissory note with SunTrust Bank, renewing the line of credit for $750,000, with Mr. Guerry and Mr. Jenkins each signing a personal guarantee. The line of credit was originally in the amount of $900,000, but Mr. Guerry paid $150,000 to reduce the debt.

Contemporaneously, Mr. Jenkins executed a promissory note (the "Promissory Note") promising to pay Mr. Guerry the principal sum of $14,194.43 with interest. Additionally, the Promissory Note stated:

> [Mr. Jenkins] and [Mr. Guerry] agree that the purpose of this Note is for [Mr. Jenkins] to assume responsibility for repayment of sufficient funds to [Mr. Guerry] so that [Mr. Jenkins] will have made equal contributions of capital and/or assumption of responsibility for repayment of indebtedness in regards to their joint business venture known as Facility Technology Solutions ("FTS"), as such contributions and indebtedness obligations are determined on the date of this instrument, in accordance with the spreadsheet which is attached as Exhibit A.

Exhibit A detailed the parties' "current" financial contributions to FTS as of the date of the Promissory Note—Mr. Guerry contributed $793,348.85 and Mr. Jenkins contributed $176,360. Exhibit A also included the parties' agreed-upon "future" contributions—Mr. Guerry agreed to contribute an additional $161,400 for a total of $954,748, and Mr. Jenkins

---

[1] Initially, there was a third member of the LLC, Danny Burns, but he is not a party to this action.

agreed to contribute an additional $750,000 (the amount owed to SunTrust) for a total of $926,360. According to Exhibit A, the amount of the Promissory Note represented one half of the difference between Mr. Guerry's total commitment and Mr. Jenkins' total commitment. The maturity date was set for October 1, 2013, at which time Mr. Jenkins was required to pay all principal and interest due on the note.[2] Mr. Jenkins also agreed that he would be liable to Mr. Guerry for his reasonable attorneys' fees, as well as, court costs and other expenses incurred to enforce the agreement.

On June 12, 2018, Mr. Guerry filed an action against Defendants for breach of contract, unjust enrichment, and fraud. As for the breach of contract claim, Mr. Guerry alleged (1) the Promissory Note was an enforceable contract between Mr. Guerry and Mr. Jenkins, (2) Mr. Jenkins "materially breached the Promissory Note by failing to pay Mr. Guerry the amounts owed to him by the maturity date," (3) as a result, Mr. Guerry "incurred damages in the amount of principal and interest due and owing under the Promissory Note," and (4) in accordance with the Promissory Note, Mr. Jenkins is liable for "all costs of collection, including, but not limited to, reasonable attorneys' fees, court costs, and expenses incurred by Mr. Guerry in connection with his effort to enforce his rights under this Promissory Note."

After Defendants filed an answer denying Mr. Guerry's allegations, Mr. Guerry served Defendants with "Plaintiff's First Set of Requests for Admission to Defendants." Defendants never responded to the requests for admission.

On July 19, 2019, Mr. Guerry filed a motion for partial summary judgment on his claims against Mr. Jenkins. Mr. Guerry supported his motion with a memorandum of law and a statement of undisputed facts that cited the Promissory Note, the SunTrust Note , the Agreement, and the unanswered requests for admission. Mr. Guerry contended it was undisputed that Mr. Jenkins executed the Promissory Note promising to pay Mr. Guerry a total of $764,194.43, which included the $750,000 FTS owed on the SunTrust credit line and the $14,194.43 Mr. Jenkins owed to equalize distributions between Mr. Guerry and Defendants. Mr. Guerry contended it was undisputed that Mr. Jenkins breached the agreement by failing to pay $764,194.43 by the Promissory Note's maturity date and that he was entitled to damages that included the principal, interest, costs, expenses, and attorneys' fees.

Mr. Guerry also contended that the requests for admission should be deemed admitted because Defendants did not respond to any of the requests. Specifically, Mr. Guerry relied, *inter alia*, on Mr. Jenkins' admissions that (1) the Promissory Note was authentic and Mr. Jenkins signed it, (2) Mr. Jenkins agreed to pay the SunTrust Note, (3)

---

[2] The interest rate prior to the maturity date was set at six percent, compounded twice per year, and it increased to ten percent after the maturity date.

Mr. Jenkins did not pay any of the amounts owed under the SunTrust Note or the Promissory Note, and (4) Mr. Guerry paid the amounts owed under the SunTrust Note.

Mr. Jenkins did not respond to Mr. Guerry's motion for partial summary judgment before the hearing set for August 26, 2019. Without explanation, Mr. Jenkins and his counsel were not present at the hearing, and the trial court continued the matter until September 9, 2019.[3]

In the interim, on September 4, 2019, Mr. Jenkins filed a response to Mr. Guerry's statement of undisputed facts and a Motion for Leave to Answer Requests for Admission, but he did not file responses to the requests for admission and did not file a memorandum of law in response to Mr. Guerry's motion for summary judgment. The only "evidence" Mr. Jenkins cited to refute many of the undisputed facts asserted by Mr. Guerry was Defendants' answer to Mr. Guerry's complaint, but the answer was not verified. Therefore, the statements in his answer did not constitute competent evidence.

After the hearing on September 9, 2019, the court ruled that Mr. Jenkins' response was untimely in accordance with the Tennessee Rules of Civil Procedure and the local rules, and the court denied Defendants' Motion for Leave to Answer Requests for Admission[4] and deemed them admitted. The court also deemed undisputed the facts cited in Mr. Guerry's Statement of Undisputed Facts, ruled that there were no material facts in dispute, and concluded that Mr. Guerry was entitled to judgment as a matter of law on his breach of contract claim. The court based its ruling on the following:

> Count 1 of the Complaint alleges that the Promissory Note . . . is a valid and enforceable agreement between Plaintiff and Defendant James Christopher Jenkins. Further, the Complaint alleges that Plaintiff has fully performed under the Promissory Note and that Defendant Jenkins has materially breached such note by failing to pay Plaintiff the amounts owed upon the maturity date of the note. Pursuant to the Request for Admissions and Statement of Undisputed Material Facts—all of these facts as alleged in the Complaint are undisputed.

---

[3] At the hearing, the court asked counsel for Mr. Guerry whether the court must first grant a separate motion to have the requests for admission deemed admitted before a litigant can rely on those admissions in a motion for summary judgment. The next day, Mr. Guerry filed a Supplemental Memorandum of Law addressing the question and arguing that it was unnecessary to file a separate motion when the unanswered admissions are brought to the court's attention in a summary judgment motion.

[4] At the hearing, Mr. Jenkins' counsel offered no explanation for failing to respond to the requests for admission other than it "slipped through the cracks." When the court asked why Mr. Jenkins failed to address the issue after Mr. Guerry filed his motion for partial summary judgment, Mr. Jenkins' counsel had no other explanation.

Having found that Mr. Jenkins was liable for breach of contract, the court held an evidentiary hearing on January 28, 2020, to address Mr. Guerry's claim for damages. Mr. Guerry was the only witness to testify at the hearing. He explained that, at the time the Promissory Note was executed, the parties were winding down the business of FTS. He testified that the Promissory Note was intended to evidence Mr. Jenkins' agreement to pay the SunTrust Note in the amount of $750,000 along with the $14,194.43 principal on the Promissory Note plus interest. Mr. Guerry testified that he made payments on the SunTrust Note and tracked those payments on a spreadsheet, which was admitted into evidence without objection. In all, Mr. Guerry's payments on the SunTrust Note totaled $899,929.35, including principal, interest, and late charges. According to the spreadsheet, Mr. Jenkins had not made any payments.

Mr. Guerry stated that Mr. Jenkins agreed to pay six percent interest on the Promissory Note's principal amount of $14,194.43 until the date of maturity, compounded twice per year, which amounted to $19,076.13. Adding the amount Mr. Guerry paid on the SunTrust Note, $899,929.35, to $19,076.13, Mr. Guerry arrived at a total of $919,005.48.

Mr. Guerry also noted that, following the date of maturity on the Promissory Note—October 1, 2013—the interest rate increased to ten percent, compounded annually. Having made the necessary calculations based on the foregoing facts, Mr. Guerry testified that Mr. Jenkins owed him a total of $1,628,074.27, which was $919,005.48 with ten percent interest for six years. Additionally, Mr. Guerry testified that he incurred attorneys' fees and other expenses in connection with his effort to enforce the Promissory Note in the amount of $71,098.05.

Following the hearing, the court entered a judgment in favor of Mr. Guerry against Mr. Jenkins in the total amount of $1,699,172.32 that included $1,628,074.27 in compensatory damages and $71,098.05 in attorneys' fees and expenses.

Mr. Jenkins filed a Rule 59.04 motion to alter or amend requesting that the court vacate the judgment finding Mr. Jenkins liable for breach of contract and allow Defendants to respond to Mr. Guerry's requests for admission. Mr. Jenkins' motion was supported by his attorney's affidavit explaining that, in August 2019, a personal family crisis arose, and, as a consequence, the attorney failed to handle his client's case appropriately. The trial court denied the motion.[5]

This appeal followed.

---

[5] Shortly thereafter, Mr. Guerry voluntarily dismissed all remaining claims against Defendants. As a consequence, all claims against all parties had been resolved; therefore, the judgement against Mr. Jenkins became a final, appealable judgment.

ANALYSIS

On appeal, Mr. Jenkins contends the trial court erred in determining that Mr. Guerry was entitled to $1,699,172.32 in damages for breach of the Promissory Note. Specifically, he argues that he was only obligated to pay Mr. Guerry the principal sum of $14,194.43 plus interest. Mr. Guerry contends that Mr. Jenkins waived the issue because he failed to raise it in the trial court. We agree with Mr. Guerry.

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). Related to the foregoing principle, Rule 36(a) of the Tennessee Rules of Appellate Procedure provides that: "Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

In Mr. Guerry's motion for partial summary judgment, he claimed that Mr. Jenkins breached the Promissory Note by failing to pay the principal amount of $14,194.43 *and* by failing to pay the amounts owed on the SunTrust Bank loan. In Mr. Jenkins' belated response to Mr. Guerry's motion, he offered no argument or evidence in opposition to this contention. And, though counsel for Mr. Jenkins very briefly addressed the issue at the hearing on the motion, his short statement, standing alone, "'does not present an attractive issue for appellate review.'"[6] *See In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) (quoting *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001)).

Moreover, at the hearing on damages, Mr. Jenkins failed to object to Mr. Guerry's evidence concerning the amounts Mr. Guerry paid on the SunTrust Note as a part of his damages claim or the amount Mr. Jenkins owed him for breach of the Promissory Note. And, significantly, Mr. Jenkins did not argue, at any time, that the Promissory Note, by its terms, only allowed Mr. Guerry to recover $14,194.43 plus interest. In short, Mr. Jenkins did not take the necessary steps to bring this issue to the trial court's attention in order to prevent the alleged error. *See* Tenn. R. App. P. 36(a).

Thus, having found that Mr. Jenkins minimally addressed the issue and failed to raise it at the appropriate time, we have determined that he waived this issue on appeal. *See In re M.L.P.*, 281 S.W.3d at 394 (determining that appellant's issue was "'late-raised [and] minimally addressed'" in the trial court, and therefore, appellant waived the issue on appeal) (quoting *In re Adoption of E.N.R.*, 42 S.W.3d at 32); *see* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible

---

[6] Specifically, counsel for Mr. Jenkins stated, "And then if you look at the first page and the amount of – that's due is 14,000 and some change, is the principal amount of the loan. The lawsuit is for, you know, I don't know, a million dollars or something like that."

for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Therefore, we affirm the judgment of the trial court.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against James Christopher Jenkins.

_____
FRANK G. CLEMENT JR., P.J., M.S.